## STATE OF CONNECTICUT *v.* MICHAEL CYR
## (SC 17975)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued December 3, 2008—officially released March 31, 2009

*Sarah Hanna*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Lisa Herskowitz*, assistant state's attorney, for the appellant (state).

*Steven A. Tomeo*, with whom was *Lawrence W. Bates, Jr.*, for the appellee (defendant).

*Opinion*

ROGERS, C. J. This matter is the latest in a line of cases raising the question of what acts constitute operation of a motor vehicle for purposes of Connecticut's statutory prohibition against operating a motor vehicle while intoxicated. The defendant, Michael Cyr, appealed from the judgment of conviction, following his conditional plea of nolo contendere[1] to the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General

---

[1] The defendant's plea was conditioned on the right to appeal from the denial of two previously filed motions to dismiss in which he challenged the adequacy of the evidence supporting the state's allegations. See General Statutes §§ 54-56 and 54-94a.

Statutes (Rev. to 2005) § 14-227a (a),[2] and the Appellate Court reversed that judgment after concluding that there was insufficient evidence that the defendant was operating his vehicle at the time of his arrest. *State* v. *Cyr*, 101 Conn. App. 701, 706–709, 923 A.2d 772 (2007). The state now appeals from the Appellate Court's judgment upon our grant of certification.[3] We conclude that the evidence in the record afforded probable cause to support the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs and, therefore, that the trial court properly declined to dismiss that charge. Accordingly, we reverse the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to the appeal. On February 28, 2005, the defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a). The charge arose from an incident that occurred in the early morning hours of February 28, in which the defendant and a friend were sitting in the defendant's car with the engine running, in a parking lot near the bar where the defendant worked. A patrolling police officer noticed the car, approached its driver's side window and spoke with the defendant, at which point the officer detected the

[2] General Statutes (Rev. to 2005) § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . in any parking area for ten or more cars . . . (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight."

[3] We granted the state's petition for certification to appeal limited to the following question: "Did the Appellate Court properly conclude that at the time of his arrest the defendant was not operating a motor vehicle?" *State* v. *Cyr*, 284 Conn. 919, 933 A.2d 722 (2007).

odor of alcohol. The defendant was placed under arrest after he failed various sobriety tests.

The defendant pleaded not guilty to the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs. On June 23, 2005, the defendant filed a motion to dismiss that charge, claiming that he had not been operating his motor vehicle on February 28, 2005. Attached to an accompanying memorandum of law was the transcript of a hearing that had been held before a department of motor vehicles hearing officer to determine whether the charges against the defendant warranted a suspension of his driver's license. That transcript reflected the sworn testimony of the defendant, two police officers who were present for the defendant's arrest and an expert witness who explained that a car that has been started with a remote starter cannot be driven until its ignition key is inserted and turned. After a hearing held on October 7, 2005, the trial court, *Cofield, J.*, denied the defendant's motion to dismiss the information. The court reasoned that from the evidence presented, viewed in the state's favor, it was possible that the defendant had started his motor vehicle with the ignition key and that fact, under existing jurisprudence, would constitute operation for purposes of § 14-227a (a).

Thereafter, the defendant was charged in part B of the information with previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs, stemming from incidents that occurred in 1997 and 1998. On October 24, 2005, the defendant filed a second motion to dismiss the first part of the information. This motion was accompanied by a joint stipulation as to facts that, the defendant claimed, established that he had not "operate[d]" his motor vehicle within the meaning of § 14-227a (a). The stipulation provided in relevant part as follows: "1. The [d]efendant . . . started his [motor vehicle] . . . on

February 28, 2005 at approximately 2:20 [a.m.] in a private parking lot at 319 Main Street, Manchester, Connecticut with his remote starter from outside the vehicle. 2. [The defendant] opened the driver's side door and sat in the driver's seat while the motor was running. 3. At no time while in the vehicle did [the defendant] put the keys in the ignition or make use of any mechanical or electrical agency . . . [and] 4. [The defendant] was arrested for [operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a)]." In short, the stipulation eliminated any factual dispute over how the defendant had started the vehicle or whether his ignition key had been inserted[4] and narrowed the question presented to whether starting a car with a remote starter, then sitting behind the steering wheel of that car with the motor running, constituted operation of a motor vehicle pursuant to § 14-227a (a). On October 24, 2005, the trial court denied the defendant's second motion to dismiss. Thereafter, the defendant entered a plea of nolo contendere, and the court rendered a judgment of conviction.[5] The defendant's appeal to the Appellate Court followed.[6]

[4] At the October 7, 2005 hearing, the state had expressed an unwillingness to concede as to these disputed facts.

[5] At that time, the defendant also pleaded guilty to part B of the information. He was sentenced to three years incarceration, execution suspended after one year, with three years probation, and was fined $2000.

[6] It is not clear from either the appeal form or the form evidencing the defendant's plea of nolo contendere whether the defendant sought to appeal the denial of his first motion to dismiss or his second motion to dismiss, or both. The appeal form identifies the "action which constitutes the final judgment [from which the appeal is taken]" as the defendant's "[n]o contest plea with reservation to appeal the conviction of driving under the influence in violation of § 14-227a." The plea of nolo contendere form, in the portion where the defendant is instructed to identify which motions he is reserving for review, was left blank. It is clear from the Appellate Court's opinion, however, that it ruled solely on the propriety of the trial court's denial of the defendant's second motion to dismiss. *State* v. *Cyr*, supra, 101 Conn. App. 703, 706–709. Neither party has taken issue with this approach.

The Appellate Court, relying solely on the joint stipulation of facts,[7] agreed with the defendant that those facts did not establish probable cause that he was operating a motor vehicle within the meaning of § 14-227a (a) and, accordingly, reversed the judgment of conviction. *State* v. *Cyr*, supra, 101 Conn. App. 706–709. Citing to decisions of this court establishing a definition of operation, the Appellate Court concluded that the stipulated facts did not meet that definition, in particular because the defendant, having used a remote starter, was outside the vehicle when he started its engine. Id., 708. The Appellate Court further reasoned that the state had not alleged, or produced any evidence to indicate, that the defendant had the ignition key in his possession[8] or that the vehicle was capable of motion without the key. Id. Consequently, the Appellate Court determined that the state had not shown that the defendant had undertaken an act that "alone or in sequence [with other acts would] set in motion the motive power of the vehicle." Id. The state then appealed to this court.

The state argues that the Appellate Court improperly concluded that the allegations and evidence were insufficient to show that the defendant was operating a motor vehicle. The state claims that the definition of operation established by this court's precedent is broad

[7] The defendant did not provide the Appellate Court with either a memorandum of decision or a signed transcript indicating the reasons for the trial court's denial of the defendant's second motion to dismiss. *State* v. *Cyr*, supra, 101 Conn. App. 706 n.3. Although signed transcripts of the hearings on both motions to dismiss ultimately were made part of the record after the Appellate Court ordered the trial court to review and sign the relevant portions of the transcripts of the trial court's oral decisions, the Appellate Court apparently did not consider the representations of counsel contained therein, or the evidence attached to the defendant's first motion to dismiss, in disposing of the appeal.

[8] According to the Appellate Court, the statement in the stipulation that the defendant did not put the keys in the ignition is "ambiguous and can equally be read as implying that the keys were not in the vehicle at all." *State* v. *Cyr*, supra, 101 Conn. App. 708 n.4.

enough to encompass the acts undertaken by the defendant, and further, that the Appellate Court failed to consider the entire record considered by the trial court when it denied the second motion to dismiss. According to the state, Connecticut's broad definition of operation and strong public policy aimed at minimizing the hazards associated with operating under the influence compel a conclusion that the defendant, by sitting in his vehicle after he started the engine with a remote starter, was operating that vehicle within the meaning of § 14-227a (a). The defendant argues in response that he was not operating his motor vehicle as contemplated by the statute because he had started its engine while he was outside of the vehicle and because his key was not in the ignition, a necessary precursor to setting in motion a vehicle that has been started with a remote starter. According to the defendant, "the fact that the engine is running does not also mean that the vehicle is capable of motive power. Where more steps are necessary to engage the motive power of a vehicle that has been started through remote control than to engage the motive power of a vehicle not remotely started, remote starting of a vehicle does not mean that one is 'operating' the vehicle [for purposes of § 14-227a]." We agree with the state.

The trial court rejected the defendant's contention that dismissal of the charges pursuant to General Statutes § 54-56 was warranted. Under the authority of § 54-56, trial courts overseeing criminal prosecutions "may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence . . . to justify the bringing or continuing of such information or the placing of the person accused therein on trial." When assessing whether the state has sufficient evidence to show probable cause to support continuing prosecution, the court must view the proffered proof,

and draw reasonable inferences from that proof, in the light most favorable to the state. *State* v. *Kinchen*, 243 Conn. 690, 702, 707 A.2d 1255 (1998); *State* v. *Morrill*, 193 Conn. 602, 611, 478 A.2d 994 (1984). "The quantum of evidence necessary to establish probable cause . . . is less than the quantum necessary to establish proof beyond a reasonable doubt at trial . . . . In [ruling on the defendant's motions to dismiss], the court [must] determine whether the [state's] evidence would warrant a person of reasonable caution to believe that the [defendant had] committed the crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 213 Conn. 708, 720, 570 A.2d 174 (1990).

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [state] cannot as a matter of law and fact state a cause of action that should be heard by the court . . . ." (Internal quotation marks omitted.) *State* v. *Haight*, 279 Conn. 546, 550, 903 A.2d 217 (2006). Accordingly, "[o]ur review of the trial court's ultimate legal conclusion and resulting [decision to deny] . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) Id. Moreover, to the extent that the resolution of this issue requires us to construe the meaning of terms used in § 14-227a (a), our review, similarly, is plenary. Id.

Pursuant to § 14-227a (a), "[a] person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person *operates a motor vehicle* . . . (1) while under the influence of intoxicating liquor or any drug or both . . . ." (Emphasis added.) Because the statute and its predecessors did not define the term "operate," and the legislative history of the statute is unilluminating, that task was left to the courts. See *State* v. *Haight*, supra, 279 Conn. 551. The resulting definition that long has been in use has its origins in *State* v. *Swift*, 125 Conn. 399, 403, 6 A.2d 359 (1939), an appeal in which this court approved the following jury instruction

explaining what it meant to operate a vehicle: "A person operates a motor vehicle within the meaning of [the] statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." (Internal quotation marks omitted.)

Adoption of that definition established, and subsequent cases confirmed, that the term " 'operating' encompasses a broader range of conduct than does [the term] 'driving.' " *State* v. *Haight*, supra, 279 Conn. 551. After a number of decisions made clear that sitting at the steering wheel of a nonmoving vehicle with the engine running constituted operation; see, e.g., *State* v. *Wiggs*, 60 Conn. App. 551, 554–55, 760 A.2d 148 (2000); *State* v. *Marquis*, 24 Conn. App. 467, 468–69, 589 A.2d 376 (1991); *State* v. *Ducatt*, 22 Conn. App. 88, 93, 575 A.2d 708, cert. denied, 217 Conn. 804, 584 A.2d 472 (1990); the question arose whether the definition could be satisfied when a defendant had been seated in a vehicle that neither was in motion nor had its motor running. See *State* v. *Haight*, supra, 552. In *Haight*, this court concluded that it could. Id. Specifically, we held that the evidence was sufficient to sustain a prosecution under § 14-227a (a) when the defendant was found sleeping in the driver's seat of his legally parked vehicle, with the key in the ignition[9] and the headlights illuminated, but without the motor running. Id., 547. We explained: "The act of inserting the key into the ignition and the act of turning the key within the ignition are preliminary to starting the vehicle's motor. *Each act,*

---

[9] In *Haight*, the evidence indicated that the key was in either the "off" or the "accessory" position and that turning it to the "start" position, and then to the "on" position, respectively, would be necessary to engage and continue running the vehicle's motor. *State* v. *Haight*, supra, 279 Conn. 548. We concluded that the factual question regarding the key's position was nondispositive, however, after concluding that mere insertion of the key constituted operation. Id., 555–56.

*in sequence with other steps, will set in motion the motive power of the vehicle. . . . Each act therefore constitutes operation of the vehicle* under the definition set forth in *Swift*." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 553.

We conclude that the facts of this case warrant a similar conclusion. In starting the engine of his vehicle remotely then getting behind the steering wheel, the defendant clearly undertook the first act in a sequence of steps necessary to set in motion the motive power of a vehicle that has been equipped with a remote starter.[10] The fact that the defendant next needed to insert his key to continue the process of setting in motion that motive power is of no greater import in determining whether there has been "operation" than the fact that a person without a remote starter, after inserting the ignition key, will need to turn that key to start the motor.[11] See footnote 9 of this opinion. In either

---

[10] We reject the claim that, pursuant to our case law, the initial act constituting operation must have taken place *after* the defendant entered his vehicle. Although the jury instruction approved in *State* v. *Swift*, supra, 125 Conn. 403, and carried forward in the jurisprudence that followed, included the phrase "when in the vehicle" preceding the proscribed conduct, we consider that phrase to be in the nature of dicta because the defendant's location was not at issue in *Swift* or in any subsequent case applying the language of the instruction. The court in *Swift* likely included the language to tailor the instruction to the facts of that case. Specifically, the defendant in *Swift* was discovered by police behind the steering wheel of a car that was stuck in an embankment. Id., 401. He was trying to "drive the car out of its position and to start the engine while [a companion] was trying to push it." Id., 402. In light of those facts and circumstances, it is probable that the trial court, by including the language "when in the vehicle," simply intended to distinguish the defendant's acts from those of his companion. Additionally, because *Swift* long predated the advent of remote starters, the court could not have been contemplating their use or intending to exclude them from the definition of what it meant to operate a vehicle, when it approved the language at issue.

[11] We disagree with the Appellate Court's assessment of the joint stipulation of facts as possibly raising an inference that the defendant was not in possession of the ignition key and its conclusion, on the basis of that assessment, that the state had failed to show probable cause sufficient to continue prosecution. *State* v. *Cyr*, supra, 101 Conn. 708. First, the record

circumstance, the defendant has taken the first step toward engaging the motive power of the vehicle but, due to the different technologies employed, the order of the steps varies. We see no logical or policy reason why reversing the sequence of the steps involved in starting a motor vehicle should defeat a finding of operation, as long as the defendant has taken the first step in whichever sequence applies.[12]

We find additional support for our conclusion in cases that have distinguished between situations in which

amply demonstrates that it was undisputed throughout the proceedings in the trial court that the defendant possessed the ignition key as he sat in his vehicle with the motor running. Specifically, the transcript of the department of motor vehicles hearing attached to the defendant's first motion to dismiss included the defendant's sworn testimony that, after entering the vehicle, he placed his keys on the center console. Furthermore, both testifying officers confirmed that, after the defendant's arrest, they saw the keys on that console. Consistent with this testimony, defense counsel, at the hearing on the first motion to dismiss, repeatedly represented to the court that the keys remained on the center console. There is no indication that the defendant, in entering the stipulation, somehow sought to rescind the evidence and factual representations that he had set forth in support of his earlier motion. In light of the evidence in the record and the representations of counsel, the stipulation cannot reasonably be read to suggest that the defendant was not in possession of his keys.

Second, as previously explained, a trial court passing on a motion to dismiss for insufficient evidence is obligated to make all reasonable inferences from the offered proof in favor of the state. *State* v. *Kinchen*, supra, 243 Conn. 702; *State* v. *Morrill*, supra, 193 Conn. 611. Even in the absence of the recited evidence and representations, therefore, it would have been improper for the trial court, faced with competing inferences arising from the stipulation, to have adopted the one most favorable to the defendant in ruling on his motion.

[12] For similar reasons, we reject the defendant's argument that, because *more steps* are necessary to engage the motive power of a vehicle that has been started by remote control than to engage the motive power of a vehicle not remotely started, one who remotely starts a vehicle is not operating the vehicle. By the defendant's logic, a person seated at the wheel of a vehicle with a standard transmission with the key in the ignition would not be operating that vehicle because he could not start the vehicle without first depressing the clutch, while a person in a vehicle with an automatic transmission under identical circumstances would be operating his vehicle because that intermediate step is unnecessary. The law cannot countenance such irrational and arbitrary line drawing.

a defendant is attempting to control a vehicle that is permanently disabled and, therefore, incapable of operation, and situations in which a temporary obstacle or impediment to movement exists that the defendant, having an otherwise functional vehicle, readily may overcome. In regard to the former category, this court has observed: "A person could not be said to be operating a car with no engine in it if he entered it and manipulated the controls . . . . A car which is totally disabled cannot be said to have been operated." *State* v. *Swift*, supra, 125 Conn. 404. Stated otherwise, manipulating the controls of an inoperable vehicle contributes nothing toward setting in motion its motive power, because such a vehicle is wholly incapable of movement. Because movement of a permanently disabled vehicle is impossible, an intoxicated person at its controls poses no danger to himself or to others and, therefore, falls outside the proscriptions of § 14-227a (a).

When an obstacle or impediment is temporary, however, it remains possible that it can be surmounted, and that movement of the vehicle will ensue. Thus, the threat targeted by statutes disallowing not just driving, but also operating a motor vehicle while intoxicated— that is, "the danger that a parked vehicle will be put in motion by an intoxicated occupant and thereby pose a risk to the safety of the occupant and others"—remains present when the condition rendering the vehicle inoperable is a temporary one that quickly can be remedied. *State* v. *Adams*, 142 Idaho 305, 308, 127 P.3d 208 (App. 2005), review denied, 2005 Idaho LEXIS 206 (June 8, 2005). Consequently, the existence of a temporary obstacle or impediment will not preclude a finding of operation. Id. ("[w]hen there is evidence from which a fact-finder could sensibly conclude that the vehicle was reasonably capable of being rendered operable, the issue [of operation] is [one] for the jury").

Consistent with the foregoing distinction, intoxicated defendants attempting to extricate vehicles that are stuck in ditches, snow or loose dirt, or hung up on some physical object, regularly are found to have been operating those vehicles, even though they temporarily were incapable of movement. See, e.g., *State* v. *Boynton*, 556 So. 2d 428, 429–30 (Fla. App. 1989); *State* v. *Saul*, 434 N.W.2d 572, 577 (N.D. 1989); *Jenkins* v. *State*, 501 P.2d 905, 906 (Okla. Crim. App. 1972); *Commonwealth* v. *Kallus*, 212 Pa. Super. 504, 506–508, 243 A.2d 483 (1968); *Gallagher* v. *Commonwealth*, 205 Va. 666, 670, 139 S.E.2d 37 (1964); see also *Waite* v. *State*, 169 Neb. 113, 117–18, 98 N.W.2d 688 (1959). We believe the present matter is analogous. Like a slippery surface or trapped wheels, the lack of an inserted ignition key is but a temporary impediment to the movement of a remotely started vehicle. Because such an impediment easily is overcome by insertion of the key, it will not preclude a finding of operation.

Our decision today finds support in the policy reasons underlying broad statutory prohibitions like the bar against operating a motor vehicle while intoxicated created by § 14-227a (a). Such provisions are *"preventive measure[s]* . . . which deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers . . . and which enable the drunken driver to be apprehended *before he strikes* . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Smelter*, 36 Wash. App. 439, 444, 674 P.2d 690 (1984); see also *State* v. *Love*, 182 Ariz. 324, 327, 897 P.2d 626 (1995) (recognizing "obvious statutory aim of enabling the drunken driver to be apprehended *before* he maims or kills himself or someone else" [emphasis added; internal quotation marks omitted]); *State* v. *Adams*, supra, 142 Idaho 307–308 ("statute is a *prophylactic measure that is intended to discourage* intoxicated persons from entering motor

vehicles except as passengers" [emphasis added]). By deterring intoxicated individuals from taking even the most preliminary steps toward driving their vehicles, our holding today furthers "Connecticut's unambiguous policy . . . [of] ensuring that our highways are safe from the carnage associated with drunken drivers." (Internal quotation marks omitted.) *State* v. *Haight*, supra, 279 Conn. 555.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.