******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MICHAEL PELELLA
## (SC 19760)

Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Syllabus*

The state, on the granting of permission, appealed from the judgment of the trial court, which granted the defendant's motion to dismiss an information charging him with two counts of the crime of threatening in the second degree. The charges stemmed from an altercation between the defendant and his brother, F, over F's intention to move into the attic of a house where the defendant and F resided with their mother. During the altercation, the defendant told F that he would "hurt" him if he went into the attic. In response to the defendant's statement to F, their mother called the police. In his motion to dismiss, the defendant claimed that the allegedly threatening statement was not a true threat, which is a form of speech that is not protected by the first amendment of the United States constitution, but was merely a spontaneous outburst, rooted in his anger and frustration with F. In granting the defendant's motion, the trial court concluded that the state would be unable to sustain its burden of establishing that the statement constituted a true threat. On appeal, the state claimed that the statement constituted a true threat and that the trial court improperly granted the defendant's motion to dismiss. The state also contended that the trial court incorrectly determined that the law required a threat to be imminent for it to constitute a true threat and improperly viewed the evidence in the light most favorable to the defendant in ruling on the motion to dismiss. *Held* that the trial court improperly granted the defendant's motion to dismiss, as a jury reasonably could have found that the defendant's statement was a true threat: the trial court, in ruling on the motion to dismiss, was required to consider the evidence before it in the light most favorable to the state, and, when the evidence was viewed in such a light, it was possible for the state, following a trial, to convince a person of reasonable caution that the defendant's statement was highly likely to be perceived as a serious expression of an intent to harm F, and, accordingly, the issue of whether the statement was a true threat should have been for the jury to decide; the defendant's statement unambiguously communicated an ultimatum, the statement, according to F, was communicated directly to F rather than to the mother in an effort to have her arbitrate the dispute between F and the defendant, the prior relationship between F and the defendant involved at least one previous encounter that was physical in nature and caused F to fear for his safety, and the mother, who was intimately familiar with the history between F and the defendant, found it necessary to call the police to the scene and could be heard on the phone with the police stating that the defendant had threatened F; moreover, it was not necessary for this court to determine whether the trial court, in ruling on the motion to dismiss, relied on the imminence of the defendant's alleged threat, as imminence is only one factor to be considered in the determination of whether a statement constitutes a true threat rather than a requirement.

Argued December 5, 2016—officially released October 10, 2017

*Procedural History*

Substitute information charging the defendant with two counts of the crime of threatening in the second degree, brought to the Superior Court in the judicial district of Danbury, where the court, *Eschuk, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the state, on the granting of permission, appealed. *Reversed*; *further proceedings.*

*Mitchell S. Brody*, senior assistant state's attorney,

with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Edward L. Miller*, deputy assistant state's attorney, for the appellant (state).

*Mary Boehlert*, assigned counsel, for the appellee (defendant).

*Opinion*

PALMER, J. The defendant, Michael Pelella, was arrested following an altercation with his brother and charged with two counts of threatening in the second degree, one for threatening to commit a crime of violence with intent to terrorize under General Statutes (Rev. to 2013) § 53a-62 (a) (2), and the other for threatening to commit a crime of violence in reckless disregard of the risk of causing terror under General Statutes (Rev. to 2013) § 53a-62 (a) (3).[1] The defendant subsequently filed a motion to dismiss the charges "for lack of sufficient evidence or cause," and the trial court granted the motion and rendered judgment dismissing the charges, concluding that the state would be unable to demonstrate that the statement by the defendant on which the charges were based constituted a " 'true threat,' " a form of speech that is not protected by the first amendment to the United States constitution.[2] Thereafter, the trial court granted the state's motion for permission to appeal,[3] and the state now claims that the trial court improperly granted the defendant's motion to dismiss after (1) incorrectly determining that an expression of an intent to cause harm to another cannot constitute a true threat unless the contemplated harm is imminent or immediate, and (2) improperly viewing the evidence before it in the light most favorable to the defendant. We agree with both of these contentions, and, therefore, we also agree that the trial court improperly granted the defendant's motion to dismiss the charges. Accordingly, we reverse the judgment of the trial court and remand the case to that court with direction to deny the motion to dismiss.

The following facts and procedural history are relevant to this appeal. According to a police report submitted by both parties, on January 20, 2014, police officers responded to 22 Fairlawn Avenue in the city of Danbury to investigate the report of a domestic disturbance at that residence. When they arrived, the officers discovered the thirty-one year old defendant, along with his twenty-two year old brother, Francis Pelella, and their mother, Linda Pelella, all three of whom resided at 22 Fairlawn Avenue. According to all three parties, the disturbance arose out of a disagreement between Francis, who wanted to move into the attic of the house, and the defendant, who had "some of his stuff up there" and objected to the move. The defendant told the officers that, faced with their opposition,[4] Francis became angry and started yelling and cursing. The mother added that Francis "got into her face." Francis, meanwhile, reported to the police that the defendant had told him, " 'if you go into the attic I will hurt you.' " Francis added that he felt threatened and feared for his safety because the defendant had physically harmed him in the past.

The defendant and the mother admitted that the defendant had said that he would hurt Francis if he

moved into the attic, but both claimed that the defendant had made the statement to the mother, not to Francis. The defendant claimed that he felt he had a right to protect his belongings. Both men attempted to play for the officers recordings that they had made of the encounter. Francis played a video recording on his cell phone that showed Francis standing at the top of a staircase and the defendant and the mother downstairs; the mother's voice could be heard, apparently on the telephone with the police, saying that the defendant had threatened to hurt Francis. Although the defendant also attempted to play for the officers an audio recording of the incident on his computer, the recording was unintelligible. Both the defendant and Francis were arrested for their participation in the altercation, the defendant for threatening and Francis for disorderly conduct.[5]

After the state filed a substitute information charging the defendant with two counts of threatening in the second degree, the defendant filed a pretrial motion to dismiss for insufficient evidence or cause pursuant to Practice Book § 41-8 (5).[6] In support of his motion, the defendant claimed that the allegedly threatening statement was merely "a spontaneous outburst rooted in his anger and frustration with his brother," and not an unprotected " 'true threat,' " as described by this court in *State* v. *Krijger*, 313 Conn. 434, 450, 97 A.3d 946 (2014). See id. (true threat must be "on its face and in the circumstances in which it is made . . . so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution" [internal quotation marks omitted]). The defendant argued that the alleged threat was conditional and not subject to an "imminent prospect of execution," and that it was "nonspecific as to what would be done," including whether the threatened response would be physical in nature. He further maintained, incorrectly, that there was "nothing to indicate [that] the threat was made directly to Francis." In opposing the defendant's motion, the state maintained that the defendant's statement fit squarely within the objective standard articulated in *Krijger*, namely, "whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." (Internal quotation marks omitted.) *State* v. *Krijger*, supra, 450. In the state's view, the statement was an explicit threat notwithstanding its conditional nature. The state noted that this court had previously found the statement, " '[t]his is for you if you bother me anymore,' " to be a threat. *State* v. *Cook*, 287 Conn. 237, 240, 255, 947 A.2d 307 (defendant was simultaneously brandishing table leg), cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). The state also asserted that Francis' claim that the defendant had hurt

him physically in the past removed any ambiguity about the nature of the threat and distinguished the present case from *Krijger*, in which the defendant's relationship with the alleged victim had previously been "cordial . . . ." *State* v. *Krijger,* supra, 454.

After considering the parties' arguments, the trial court issued a memorandum of decision in which it granted the defendant's motion to dismiss.[7] The court commenced its analysis of the defendant's claim by characterizing the issue as whether the state could establish that the defendant's words amounted to a true threat or "were instead either part of a discourse, or were merely words uttered as an 'unplanned [and] spontaneous reaction to the upset and anger [he] felt' . . . and carried no immediate plan to harm." (Citation omitted.) The court then noted that, under *State* v. *Krijger,* supra, 313 Conn. 460, "the state must do more than demonstrate that a statement *could* be interpreted as a threat." (Emphasis in original; internal quotation marks omitted.) Rather, the state must show that "a reasonable listener, familiar with the entire factual context of the defendant's statements, would be highly likely to interpret them as communicating a genuine threat of violence rather than protected expression, however offensive or repugnant." (Internal quotation marks omitted.) The court further explained that the statement at issue was " 'susceptible of varying interpretations, at least one of which [was] nonthreatening,' " and suggested that it may simply have been "an expression of how strongly [the defendant] felt about Francis' plan to move into the attic" or "an appeal to the mother to arbitrate the dispute." In light of the factual context, including the lack of evidence that the defendant approached Francis or took other steps to carry out his threat, the court determined that the state "would be unable to show that a reasonable listener, fully familiar with the facts, would be '*highly likely*' to interpret them as a genuine threat of violence rather than protected expression," as *Krijger* requires.[8] (Emphasis in original.) The court finally concluded that, because the state would be unable to sustain its burden of establishing that the statement constituted a true threat, the defendant was entitled to a dismissal of the charges.

On appeal, the state renews its claim that the defendant's statement bore the necessary hallmarks of an unprotected true threat and that the trial court therefore improperly granted the defendant's motion to dismiss on first amendment grounds. The state contends, first, that the trial court incorrectly interpreted *Krijger* as requiring that a threat must be imminent to constitute a true threat. According to the state, the purported imminence requirement in *Krijger* constitutes dictum, runs counter to prior cases of this court that have explicitly relied on the opposite proposition, and ignores the fact that threats may be effective—that is, they may convey a serious intent to cause harm—regardless of

whether they will be imminently executed. The state also asserts that the trial court's ruling is flawed because the court improperly viewed the evidence before it in the light most favorable to the defendant and that it should have considered that evidence in the light most favorable to the state. Finally, the state claims that, considering all the relevant circumstances presented to the court in that light, a jury reasonably could find that the defendant's statement constituted an unprotected true threat.

The defendant maintains that the trial court did not, in fact, rely on an "imminence requirement" in dismissing the charges and, instead, considered the threats "in light of their entire factual context," noting only that the imminence of the harm "must be considered." (Internal quotation marks omitted.) The defendant further claims that the trial court correctly concluded, upon consideration of the totality of the evidence presented, that the state cannot prove that the defendant's statement was a true threat.

Because this appeal challenges the propriety of the trial court's decision to grant the defendant's motion to dismiss, we review de novo the trial court's ultimate determination as to whether the defendant's statement constituted a true threat.[9] Thus, we need not decide whether the court relied on the imminence of the alleged threat in making its determination. Nonetheless, we take this opportunity to clarify the apparent inconsistency in our precedents. We conclude that imminence, at least in the sense of immediacy,[10] is only one factor to be considered in determining whether a statement constitutes a true threat under our law, not a requirement.

Our plenary review of the state's claim also makes it unnecessary to determine whether the trial court viewed the evidence in the light most favorable to the defendant. As we explain more fully hereinafter, for purposes of the present case, the proper analytical approach is to evaluate the evidence in the light most favorable to the state. Having considered the evidence in that light, we are persuaded, contrary to the conclusion of the trial court, that a jury reasonably could find that the defendant's statement was an unprotected true threat prohibited by § 53a-62 (a).

"The [f]irst [a]mendment [to the United States constitution], applicable to the [s]tates through the [due process clause of the] [f]ourteenth [a]mendment, provides that 'Congress shall make no law . . . abridging the freedom of speech.' The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia* v. *Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). "The protections afforded by the [f]irst [a]mendment, however, are not absolute, and . . . the government

may regulate certain categories of expression consistent with the [c]onstitution. . . . The [f]irst [a]mendment permits restrictions [on] the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." (Citation omitted; internal quotation marks omitted.) Id., 358–59.

True threats comprise one such unprotected category of speech. See, e.g., id., 359. "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." (Citations omitted; internal quotation marks omitted.) Id., 359–60. As a result, "we must distinguish between true threats, which, because of their lack of communicative value, are not protected by the first amendment, and those statements that seek to communicate a belief or idea, such as political hyperbole or a mere joke, which are protected." *State* v. *DeLoreto*, 265 Conn. 145, 155, 827 A.2d 671 (2003). "In the context of a threat of physical violence, [w]hether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." (Internal quotation marks omitted.) Id., 156.

In *DeLoreto*, we further concluded that a "threat need not be imminent to constitute a constitutionally punishable true threat." Id., 159. In one incident described in that case, the defendant, Dante DeLoreto, followed a police officer out of a convenience store and said to the officer, "I'm going to kick your punk ass" and "I'll kick your ass . . . ." (Internal quotation marks omitted.) Id., 150, 158. We concluded that the fact that the officer was on duty and armed "[did] not lessen the impact of the threat; it just made it more difficult for [DeLoreto] to carry out his threat immediately." Id., 158. "Imminence," we stated, "is not a requirement under the true threats doctrine." Id.

Thereafter, in *State* v. *Cook*, supra, 287 Conn. 257, we reached the same conclusion. In that case, the defendant, Daniel Cook, had been involved in a long-standing dispute with his neighbor, whom he eventually threatened with a wooden table leg, which he waved in the air while stating, " '[t]his is for you if you bother me anymore.' " Id., 238, 240. Cook claimed that he was entitled to a judgment of acquittal because the state

failed to prove that his threatened use of the table leg "constituted a present threat, rather than a future threat . . . ." Id., 256. We rejected the claim, concluding that neither the statute under which Cook was charged nor the true threats doctrine required proof of imminence.[11] Id., 256–57.

Most recently, in *State* v. *Krijger*, supra, 313 Conn. 434, we reiterated our objective standard for evaluating true threats, that is, whether the statement at issue reasonably would be interpreted as a serious expression of intent to harm, noting that "[a]lleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." (Internal quotation marks omitted.) Id., 450. We further stated, however, that "[p]rosecution under a statute prohibiting threatening statements is constitutionally permissible [as] long as the threat on its face and in the circumstances in which it is made is s*o unequivocal, unconditional, immediate and specific* as to the person threatened, *as to convey a gravity of purpose and imminent prospect of execution* . . . . *United States* v. *Malik*, 16 F.3d 45, 51 (2d Cir.), cert. denied, 513 U.S. 968, 115 S. Ct. 435, 130 L. Ed. 2d 347 (1994)." (Emphasis added; internal quotation marks omitted.) *State* v. *Krijger*, supra, 450. The state contends that this language is dictum and inconsistent with relevant precedent. To the extent that the challenged language can be read to suggest that a true threat must be subject to immediate execution unburdened by any conditions, we agree with the state.

We agree, first of all, that the disputed language in *Krijger* relating to imminence was not essential to our holding. In that case, the defendant, Stephen Jason Krijger, was involved in an ongoing zoning dispute with the town of Waterford. Id., 436. Following a hearing on the matter, Krijger followed the town attorney out of the courtroom, "express[ing] his anger over the town's decision to seek fines [against him] and call[ing] [the attorney] a liar and an asshole." (Internal quotation marks omitted.) Id., 439. Upon exiting the courthouse, Krijger "appeared angry; his face was red and there was [saliva] in the corner of his mouth. [Krijger] then stated to [the attorney], [m]ore of what happened to your son is going to happen to you, to which [the attorney] replied, [w]hat did you say? . . . [Krijger] responded, I'm going to be there to watch it happen." (Internal quotation marks omitted.) Id., 440. Krijger's statement alluded to a serious car accident several years earlier that had left the attorney's only son with debilitating injuries. Id., 440 and n.6. Krijger was convicted, following a jury trial, of threatening in violation of General Statutes (Rev. to 2007) § 53a-62 (a) (3)[12] and breach of the peace in violation of General Statutes § 53a-181 (a) (3),[13] and, following Krijger's appeal, the Appellate Court affirmed the judgment of conviction. See id., 437. After granting Krijger's petition for certification to

appeal, we held that the defendant's statements did not, on their face, unambiguously constitute true threats; see id., 452; and that a "more plausible" interpretation was that Krijger "merely was expressing the view that what goes around, comes around . . . ." (Internal quotation marks omitted.) Id., 456. We observed that Krijger was "angry, but not physically aggressive"; id., 456; that the record was devoid of evidence that he had threatened the attorney in the past or was even "capable of carrying out such a threat"; id.; that Krijger and the attorney previously had had a "long-standing" and "cordial" working relationship; id., 454; and that Krijger apologized for his behavior to the attorney's associate only moments after the incident. See id., 457–58. As a result, we concluded that the state had failed to meet "its burden of removing the ambiguity inherent in [Krijger's] remarks"; id., 458; in order to demonstrate that they "were anything *other* than a spontaneous outburst, rooted in [his] anger and frustration"; (emphasis in original) id., 459; and reversed the judgment of the Appellate Court. Id., 461. Thus, rather than simply observing that the state had presented no evidence that Krijger was capable of imminently orchestrating a car accident; id., 456 n.11; we undertook a thorough, context-specific analysis of the statement, concluding that the threat's lack of immediacy was only one factor in the considerably broader analysis of whether Krijger's statements constituted a true threat.

In *DeLoreto* and *Cook*, by contrast, our explicit determination that imminence was not a requirement under the true threats doctrine was integral to the outcome of each case. In *DeLoreto*, we acknowledged that the context made it unlikely that DeLoreto would carry out the threat immediately but found it to be a true threat nonetheless. See *State* v. *DeLoreto*, supra, 265 Conn. 158–59. In *Cook*, we rejected Cook's contention that a threat of "future" action at some indeterminate point in time—expressed by the conditional " 'if you bother me anymore' "—could not constitute a true threat. *State* v. *Cook*, supra, 287 Conn. 240, 256–58. Rather than imminence, at least in the sense of temporal immediacy, the critical consideration in *DeLoreto*, *Cook* and *Krijger* was the seriousness of purpose attributable to each defendant's statement or statements.[14] See *State* v. *Krijger*, supra, 313 Conn. 454–58; *State* v. *Cook*, supra, 255–56; *State* v. *DeLoreto*, supra, 157–59; see also *State* v. *Carter*, 141 Conn. App. 377, 401, 61 A.3d 1103 (2013) ("prospective nature" of statements made by handcuffed defendant did not necessarily make statements "merely repugnant acts of puffery" rather than true threats), aff'd, 317 Conn. 845, 120 A.3d 1229 (2015).

It is doubtful, in fact, that even the Second Circuit Court of Appeals, from which we appropriated the language under consideration, actually requires that a true threat be imminent. In *United States* v. *Kelner*, 534 F.2d 1020 (2d Cir.), cert. denied, 429 U.S. 1022, 97 S. Ct.

639, 50 L. Ed. 2d 623 (1976), the original source of the requirement, a concurring judge asserted that "the proposed requirement that the threat be of immediate, imminent and unconditional injury" was dictum and not required by the first amendment. Id., 1029 (Mulligan, J., concurring); see also *United States* v. *Turner*, 720 F.3d 411, 423–24 (2d Cir. 2013) (citing with approval Judge Mulligan's concurrence in *Kelner*), cert. denied, U.S. , 135 S. Ct. 49, 190 L. Ed. 2d 29 (2014); cf. *Harrell* v. *State*, 297 Ga. 884, 887, 778 S.E.2d 196 (2015) (citing *Turner* for proposition that "[a] 'true threat' may be conditional, need not be explicit, and the threatened violence need not be imminent"). In addition, in *United States* v. *Malik*, supra, 16 F.3d 45, the immediate source of the challenged language in *Krijger*, the Second Circuit did not rely on proof of imminence; rather, it upheld the defendant's conviction "for writing two letters, *while incarcerated*, that threatened violence . . . ." (Emphasis added.) *United States* v. *Voneida*, 337 Fed. Appx. 246, 249 (3d Cir. 2009). This is consistent with the Fifth Circuit's appraisal of *Kelner*, which equated that case's imminence requirement with "clarity of purpose . . . ." *Shackelford* v. *Shirley*, 948 F.2d 935, 939 (5th Cir. 1991).

Indeed, logic and reason dictate that a threat—for example, "if you report me to the police, I'll kill your family"—need not be imminent to be outside the protections of the first amendment.[15] Imminence is not a requirement because "a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." (Internal quotation marks omitted.) *Virginia* v. *Black*, supra, 538 U.S. 360. Indeed, "[t]hreatening speech . . . works directly the harms of apprehension and disruption, whether the apparent resolve proves bluster or not and whether the injury is threatened to be immediate or delayed. Further, the social costs of a threat can be heightened rather than dissipated if the threatened injury is promised for some fairly ascertainable time in the future . . . for then the apprehension and disruption directly caused by the threat will continue for a longer rather than a shorter period." *Planned Parenthood of Columbia/Willamette, Inc.* v. *American Coalition of Life Activists*, 290 F.3d 1058, 1107 (9th Cir. 2002) (Berzon, J., dissenting), cert. denied, 539 U.S. 958, 123 S. Ct. 2637, 156 L. Ed. 2d 655 (2003). Though relevant, the primary focus of our inquiry is not immediacy but whether the threat "convey[s] a gravity of purpose and likelihood of execution . . . ." (Internal quotation marks omitted.) *United States* v. *Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015); see also *United States* v. *Vaksman*, 472 Fed. Appx. 447, 449 (9th Cir.) (no requirement of imminent action), cert. denied, 568 U.S. 1056, 133 S. Ct. 777, 184 L. Ed. 2d 514 (2012).

We next turn to the state's claim that the trial court improperly viewed the evidence before it in the light most favorable to the defendant in granting the motion to dismiss. The state argues, more specifically, that the trial court improperly determined that the evidence was insufficient to prove that the defendant's statement was a true threat because the opposite conclusion was "equally feasible . . . ." The defendant responds that, "[e]ven . . . if . . . the trial court should have viewed the evidence underlying the motion to dismiss in a light most favorable to the state, the error would be harmless" because "the state could not demonstrate that a reasonable listener would find the statement to be a genuine threat of violence rather than protected speech." We agree with the state that the trial court was obliged to consider the evidence before it in the light most favorable to the state and, furthermore, that, when the evidence is viewed in such a light, the state may be able to prove at trial that the defendant's statement constituted a true threat.

In order to demonstrate the existence of a true threat at trial, "the state must do more than demonstrate that a statement *could* be interpreted as a threat. When . . . a statement is susceptible of varying interpretations, at least one of which is nonthreatening, the proper standard to apply is whether an objective listener would readily interpret the statement as a real or true threat; nothing less is sufficient to safeguard the constitutional guarantee of freedom of expression. To meet this standard . . . the state [is] required to present evidence demonstrating that a reasonable listener, familiar with the entire factual context of the defendant's statements, would be highly likely to interpret them as communicating a genuine threat of violence rather than protected expression, however offensive or repugnant." (Emphasis in original.) *State* v. *Krijger*, supra, 313 Conn. 460.

The standard to be applied in determining whether the state can satisfy this burden in the context of a pretrial motion to dismiss under General Statutes § 54-56 and Practice Book § 41-8 (5) is no different from the standard applied to other claims of evidentiary sufficiency. General Statutes § 54-56 provides that "[a]ll courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."[16] "When assessing whether the state has sufficient evidence to show probable cause to support continuing prosecution [following a motion to dismiss under § 54-56], the court must view the proffered proof, and draw reasonable inferences from that proof, in the light most

favorable to the state. *State* v. *Kinchen*, 243 Conn. 690, 702, 707 A.2d 1255 (1998); *State* v. *Morrill*, 193 Conn. 602, 611, 478 A.2d 994 (1984). The quantum of evidence necessary to [overcome a motion to dismiss] . . . is less than the quantum necessary to establish proof beyond a reasonable doubt at trial . . . . In [ruling on the defendant's motion to dismiss], the court [must] determine whether the [state's] evidence would warrant a person of reasonable caution to believe that the [defendant had] committed the crime. . . . *State* v. *Patterson*, 213 Conn. 708, 720, 570 A.2d 174 (1990)." (Internal quotation marks omitted.) *State* v. *Cyr*, 291 Conn. 49, 55–56, 967 A.2d 32 (2009). Thus, the trial court must ask whether the evidence would allow a person of reasonable caution, *viewing the evidence presented in the light most favorable to the state*, to believe that the statement at issue was highly likely to be perceived by a reasonable person as a serious threat of physical harm. If that evidence would support such a finding— regardless of whether it might also support a different conclusion—then the motion to dismiss must be denied.

With these principles in mind, we consider the merits of the state's claim, turning first to the language of the defendant's allegedly unlawful statement. According to Francis, the defendant told him, " 'if you go into the attic I will hurt you." As the trial court recognized, such words are "clearly capable of being a true threat . . . ." Indeed, unlike the precatory statements at issue in *Krijger*—for example, " 'I'm going to be there [when you get hurt]' "; *State* v. *Krijger*, supra, 313 Conn. 440; the statement in the present case unambiguously communicated not a wish but an ultimatum. Nonetheless, the defendant and his mother claimed that the defendant's statement about hurting Francis was made not to Francis directly but to the mother. See *United States* v. *Dinwiddie*, 76 F.3d 913, 925 (8th Cir.) (considering "whether the threat was communicated directly to [the] victim"), cert. denied, 519 U.S. 1043, 117 S. Ct. 613, 136 L. Ed. 2d 538 (1996). As a result, the trial court in the present case determined that, although the statement "*might* have been made with the purpose that [Francis] would hear it and be afraid, the method of delivery equally supports the thesis that the statement was not a true threat but a communication of just how important the issue was to the defendant. It might even have been an appeal to the mother to arbitrate the dispute." (Emphasis in original.) Viewing the evidence in the light most favorable to the state, however, we are required to credit Francis' account—that the defendant made the statement directly to Francis. Considered in that light, the defendant's statement appears less like an entreaty to his mother than the expression of an intention to harm Francis.

We must also consider the parties' prior relationship. See *State* v. *Krijger*, supra, 313 Conn. 454 ("[w]hen the alleged threat is made in the context of an existing or

increasingly hostile relationship, courts are more apt to conclude that an objectively reasonable speaker would expect that the statement would be perceived by the listener as a genuine threat"). In this case, police officers were called to the scene of the dispute, a location to which they previously had responded "numerous times," and Francis told officers at the scene that the defendant's statement had caused him to fear for his safety because the defendant had physically hurt him in the past. At a hearing on his disorderly conduct charges, Francis later stated that he hoped "that, in other cases, similar to mine, there's more investigation into the civility of the household, as a whole, and the person doing all the antagonizing, like who it really is." His attorney confirmed that "[i]t's a difficult family situation . . . ." Viewed in the light most favorable to the state, therefore, we are bound to conclude that at least one previous encounter between the defendant and his brother was physical in nature and sufficiently serious to cause Francis to fear for his safety if he crossed the defendant. This context significantly increases the likelihood that an objective listener would perceive the defendant's statement as a serious threat to perpetrate physical harm.

The immediate circumstances surrounding the defendant's statement, including Francis' reaction, are also relevant. See *State* v. *Krijger*, supra, 313 Conn. 454. It is true, as the trial court observed, that Francis neither fled nor called the police, opting instead to record the encounter. Nor is there any evidence that the defendant approached Francis or otherwise physically engaged him during the altercation. Nonetheless, the very fact that the defendant's mother, who was intimately familiar with the history between the brothers, found it necessary to call the police to the scene, and could be heard on the phone saying that the defendant had threatened Francis, suggests that the defendant's mother believed that the threat might *imminently* result in physical harm.[17] In any event, as we have explained, the mere possibility that a threat will not be executed immediately does not resolve whether it constitutes a *true threat*. See, e.g., *State* v. *DeLoreto*, supra, 265 Conn. 159; see also *State* v. *Cook*, supra, 287 Conn. 255 (statement may have constituted true threat even though victim's reaction to defendant's conduct, despite their volatile history, "suggest[ed] that he was not genuinely concerned for his safety").

Irrespective of the threat's "imminence," the first amendment was not intended to protect speech lacking in any communicative purpose other than to prevent others from doing what they have a lawful right to do. See *Shackelford* v. *Shirley*, supra, 948 F.2d 938 ("The notion that some expression may be regulated consistent with the first amendment . . . starts with the already familiar proposition that expression has special value only in the context of dialogue: communication

in which the participants seek to persuade, or are persuaded; communication [that] is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs . . . . It is not plausible to uphold the right to use words as projectiles [when] no exchange of views is involved." [Internal quotation marks omitted.]), quoting L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-8, pp. 836–37; see also *In re M.S.*, 10 Cal. 4th 698, 714, 896 P.2d 1365, 42 Cal. Rptr. 2d 355 (1995) ("Violence and threats of violence . . . fall outside the protection of the [f]irst [a]mendment because they coerce by unlawful *conduct*, rather than persuade by expression, and thus play no part in the 'marketplace of ideas.' . . . As long as the threat reasonably appears to be a serious expression of intention to inflict bodily harm . . . and its circumstances are such that there is a reasonable tendency to produce in the victim a fear the threat will be carried out . . . the fact [that] the threat may be contingent on some future event [e.g., 'If you don't move out of the neighborhood by Sunday, I'll kill you'] does not cloak it in constitutional protection." [Citations omitted; emphasis in original.]).

The limited facts in the record make for a very close case. On the one hand, we are committed to "ensur[ing] that only *serious* expressions of an intention to commit an act of unlawful violence are punished . . . ." (Emphasis in original.) *State* v. *Krijger*, supra, 313 Conn. 460. On the other hand, "[when] there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." *State* v. *Morrill*, supra, 193 Conn. 609; see also *United States* v. *Dillard*, supra, 795 F.3d 1199 ("If there is no question that a defendant's speech is protected by the [f]irst [a]mendment, the court may dismiss the charge as a matter of law. . . . But, [in the absence of] an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury." [Citation omitted; internal quotation marks omitted.]). The present case, unlike *Krijger*, involves a direct threat of harm arising out of the context of a difficult family relationship and prior use of physical force on the part of the defendant. In light of the mother's apparent concern, and viewing the evidence in the light most favorable to the state, we cannot say that the state, following a trial, would be unable to convince a person of reasonable caution that the defendant's statement was "highly likely" to be perceived as a serious expression of an intent to harm. *State* v. *Krijger*, supra, 460. Rather, we believe that the issue is one that is properly left for a jury to decide. See, e.g., *State* v. *Cook*, supra, 287 Conn. 255–56 (concluding that, when evidence could equally support finding that statement was true threat or finding that it was "mere puffery," evidence was sufficient for jury

to determine whether statement constituted true threat). We emphasize, however, that the facts and inferences most favorable to the state may not be borne out at trial, and we express no view as to whether the defendant's statement would, following an independent review of a full trial record, constitute a true threat.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion to dismiss and for further proceedings according to law.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes (Rev. to 2013) § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when . . . (2) such person threatens to commit any crime of violence with the intent to terrorize another person, or (3) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror."

Hereinafter, all references to § 53a-62 are to the 2013 revision unless otherwise noted.

[2] As we discuss more fully hereinafter, a "true threat" is "a serious expression of an intent to commit an act of unlawful violence against another"; (internal quotation marks omitted) *State* v. *Cook*, 287 Conn. 237, 239, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008); and is not protected by the first amendment.

[3] The state, on the granting of permission, appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The defendant claimed that the mother also objected to the move.

[5] Francis subsequently pleaded guilty to the charge of disorderly conduct and received an unconditional discharge, but his arrest and conviction also constituted a parole violation for which, along with other parole violations, he was sentenced to five months of incarceration.

[6] Practice Book § 41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information:

\* \* \*

"(5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial . . . ."

As we discuss more fully hereinafter, General Statutes § 54-56 also provides for a pretrial motion to dismiss on grounds of evidentiary insufficiency in language nearly identical to that in Practice Book § 41-8 (5).

[7] Upon agreement of the parties, the trial court based its decision on a limited record, which, in its entirety, consisted of a police report concerning the January 20, 2014 incident and the transcript of a hearing regarding Francis' charges for disorderly conduct and violation of probation.

[8] In *Krijger*, we stated that, "[w]hen . . . a statement is susceptible of varying interpretations, at least one of which is nonthreatening, the proper standard to apply is *whether an objective listener* would readily interpret the statement as a real or true threat . . . ." (Emphasis added.) *State* v. *Krijger*, supra, 313 Conn. 460. We acknowledge, however, that there is a split of authority as to whether the proper standard involves an objective listener or an objective speaker; see, e.g., *United States* v. *Saunders*, 166 F.3d 907, 913 n.6 (7th Cir. 1999); and, in fact, this court has previously used language suggesting that the proper test contemplates the perspective of an objective speaker. See, e.g., *State* v. *DeLoreto*, 265 Conn. 145, 156, 827 A.2d 671 (2003) ("[w]hether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault" [internal quotation marks omitted]). Because that issue has not been raised in this case, however, we do not address it.

[9] "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [state] cannot as a matter of law and fact state a cause of action that should be heard by the court . . . . Accordingly, [o]ur review of the trial court's ultimate legal conclusion and resulting [decision to grant] . . . the motion to dismiss will be de novo." (Citation omitted; internal quotation marks omitted.) *State* v. *Cyr*, 291 Conn. 49, 56,

967 A.2d 32 (2009). We note, as well, that the trial court was not required to make any credibility or other factual findings for purposes of ruling on the motion to dismiss. See footnote 7 of this opinion.

[10] The trial court in the present case uses "imminent" interchangeably with "immediate," as have certain decisions of this court. See, e.g., *State* v. *Cook*, supra, 287 Conn. 256–57; *State* v. *DeLoreto*, 265 Conn. 145, 158–59, 827 A.2d 671 (2003). Although "imminence" may also be used to convey a sense of inevitability uncoupled from temporal proximity; see Webster's Third New International Dictionary (2002) p. 1130 (defining "imminent" as both "ready to take place" and "hanging threateningly over one's head"); we use the term in this opinion as we did in *DeLoreto* and *Cook*, that is, as tending to suggest that the threat will be executed immediately.

[11] Subsequently, in *State* v. *Moulton*, 310 Conn. 337, 78 A.3d 55 (2013), the defendant, Diana L. Moulton, a postal worker, called her place of employment by telephone and stated to an employee: " '[T]he shootings, you know, the shootings [that recently occurred] in California. I know why she [the perpetrator of those shootings] did that. They are doing the same thing to me that they did to her, and I could do that, too.' [Moulton] was referring to an incident that took place approximately five days prior when a postal employee in California shot and killed several postal workers inside the . . . facility where [the employee] worked." Id., 343. In that case, we noted that Moulton had "couched her alleged threat in conditional terms, stating that she ' "could" ' engage in violent conduct similar to that which had occurred several days earlier in California, and that she would be calling back in a few days." Id., 369 n.26. We expressly declined, however, to "suggest that [such statements] were not sufficiently direct or immediate" for a jury to determine that they constituted a true threat. Id.

[12] Krijger was found not guilty of intentional threatening; instead, he was found guilty under the reckless disregard provision of General Statutes (Rev. to 2007) § 53a-62 (a) (3). *State* v. *Krijger*, supra, 313 Conn. 451.

[13] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (3) threatens to commit any crime against another person or such other person's property . . . ."

[14] *State* v. *Moulton*, 310 Conn. 337, 78 A.3d 55 (2013), is consistent with these cases. Although we indicated in *Moulton* that a true threat must be "direct" and "immediate," the alleged threat at issue was conditional, made over the telephone, and tempered by the promise that Moulton would call back in a few days. Id., 369 n.26. Despite this lack of imminence, we declined to hold that the statements were protected as a matter of law. See id., 369 and n.26.

[15] We also clarify that true threats need not be unconditional; cf. *State* v. *Krijger*, supra, 313 Conn. 450 (true threat must be "so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution" [internal quotation marks omitted]); a threat may still be a true threat even if it is presented in conditional terms such that the listener can escape from physical violence by fulfilling certain demands or directives. Thus, we agree with the Second Circuit Court of Appeals that "a conditional threat—e.g., 'your money or your life'—is nonetheless a threat . . . ." (Citation omitted.) *United States* v. *Malik*, supra, 16 F.3d 49; see *United States* v. *Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) ("[m]ost threats are conditional; they are designed to accomplish something; the threatener hopes that [he] *will* accomplish it, so that he won't have to carry out the threats" [emphasis in original]); see also *United States* v. *Dillard*, 795 F.3d 1191, 1200 (10th Cir. 2015) ("[the court's] cases make clear that a statement may constitute a true threat even if it is conditional"); *United States* v. *Clemens*, 738 F.3d 1, 8 (1st Cir. 2013) (rejecting requirement that threats be "unequivocal, unconditional, and specific" [internal quotation marks omitted]); *State* v. *Moulton*, 310 Conn. 337, 369 n.26, 78 A.3d 55 (2013); (conditional nature of threat would not necessarily prevent it from being considered true threat); *State* v. *Cook*, supra, 287 Conn. 257 ("a threat, by definition, is an expression of an intent to cause some future harm"). To the extent that a threat's conditionality is relevant, we look to whether the threat nonetheless constitutes a serious expression of intent to harm. Cf. *Watts* v. *United States*, 394 U.S. 705, 707, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969) (statement is not true threat when conditioned on event speaker proclaimed would never happen); see also *Planned Parenthood of Columbia/Willamette, Inc.* v. *American Coalition of Life Activists*, supra, 290 F.3d 1058, 1111 n.14 (Berzon, J.,

dissenting) (" '[u]nconditional' refers to the degree of determination contained in the threat, not whether it is 'conditioned' in the sense that the target could avoid the harm by bowing to the speaker's will").

[16] See also Practice Book § 41-8 (5); footnote 6 of this opinion.

[17] Although the trial court found only that the police were called "by the defendant and/or his mother," the police report states that the mother was talking with the police on her cell phone and told them that the defendant threatened Francis. In any event, viewing the evidence in the light most favorable to the state, we assume, for purposes of the motion to dismiss, that the mother called the police.

———————————————