******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WILLIAM
CONWAY HARPER
(AC 37022)

DiPentima, C. J., and Sheldon and Bear, Js.

*Argued April 4—officially released August 2, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, geographical area number twenty,
Holden, J.)

*Richard Emanuel*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with
whom, on the brief, were *Richard J. Colangelo*, *Jr.*,
state's attorney, *Katherine Donoghue*, deputy assistant
state's attorney, and *Ori Beeri*, legal intern, for the
appellee (state).

*Opinion*

SHELDON, J. The defendant, William Conway Harper, appeals from the judgment of conviction rendered against him after a court trial on charges of criminal trespass in the third degree in violation of General Statutes § 53a-109 (a) and possession of less than one-half ounce of marijuana in violation of General Statutes § 21a-279a (a).[1] On appeal, the defendant claims (1) that the evidence was insufficient to support either of his challenged convictions and (2) that the trial court erred in denying his motion to suppress the marijuana seized from a vehicle in which he was a passenger upon which the latter conviction was based. We reverse the defendant's conviction for criminal trespass in the third degree on the ground of insufficient evidence, but affirm his conviction for possession of marijuana upon concluding that the evidence at trial was sufficient to support that conviction and that the court properly denied his motion to suppress.

After a pretrial hearing on the defendant's motion to suppress, the trial court found the following facts. On the evening of July 13, 2012, Officers Julio Rodriguez and Steven Luciano of the Norwalk Police Department were working as members of a special services unit that patrolled Norwalk housing areas, looking for criminal activity such as narcotics transactions and trespassing. As part of their regular routine, the officers patrolled all of the housing projects in Norwalk due to numerous complaints by local residents about "intruders bringing in drugs, gangs, violence, and [a]ffecting the quality of their" lives.

On July 13, 2012, at approximately 9 p.m., the officers entered the parking lot of a housing project at 16 School Street in Norwalk, which is a dead end, by making a left turn from the main driveway, then a quick right turn, which put them at the rear of the property between buildings five and one. They observed that "No Trespassing" signs were posted throughout the property. At the far end of the parking lot there was a dumpster, which was surrounded on three sides by a fence that bore a "No Trespassing" sign. The officers parked their marked police cruiser behind a Honda Accord that was parked next to the dumpster. Then they observed the defendant, who appeared to be startled by their presence, emerge from behind the dumpster and walk quickly and nervously to the Honda, with his head down, trying to avoid eye contact with the officers. He entered the passenger side of the vehicle.

The officers then observed another male, Kyle Freitag, emerge from behind the dumpster and walk nervously to the Honda, also with his head down and trying to avoid eye contact with them, before entering the driver's side of the Honda. After entering the vehicle, Freitag put it in reverse and tried to leave the area, but

he was unable to do so because the police cruiser was parked immediately behind him.

Luciano testified that, due to his frequent patrols of 16 School Street, he had become familiar with most of the residents of the property, but he did not recognize either of the men in the Honda as a resident. The officers ran the license plate of the Honda through the Department of Motor Vehicles' database and discovered that the vehicle was not registered to anyone residing at 16 School Street. On that basis, aware of the constant complaints of residents about trespassers on the property, the officers exited their cruiser to determine what, if any, reason the two men had for being on the premises. While walking toward the Honda, the officers encountered Mary Horelick, a resident of 16 School Street, who told them that she did not know the men in the Honda, one of whom had just urinated on her fence.

Upon nearing the Honda, however, the focus of the officers' investigation changed when they smelled "the pungent strong odor of marijuana," coming from the vehicle. This finding led them to call in a canine unit to search the vehicle's interior. Shortly thereafter, Officer Garrett Kruger and his dog, Kimbo, arrived on the scene and conducted a search of the Honda. The search revealed a bag of marijuana on the floor of the vehicle, near the front passenger seat, where the defendant had been sitting.[2] As a result of this discovery, the defendant was placed under arrest. Despite the officers' original intentions when they first approached the Honda, they never questioned either the defendant or Freitag as to why they were at 16 School Street on the evening in question.

After a trial to the court, the defendant was found guilty of criminal trespass in the third degree and sentenced to a term of ninety days incarceration, execution suspended, and one year of probation. The court also found the defendant guilty of possession of less than one-half ounce of marijuana and sentenced him on that charge to a fine of $150. This appeal followed. Additional facts will be set forth as they pertain to each of the defendant's claims on appeal.

I

The defendant first claims that the evidence adduced at trial was insufficient to support either of his challenged convictions. "In [a defendant's] challenge to the sufficiency of the evidence . . . [w]hether we review the findings of a trial court or the verdict of a jury, our underlying task is the same. . . . We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded

that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . In assessing the defendant's claim that the evidence against him was insufficient to establish his guilt . . . we must look to the trial court's findings of fact. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . .

"In evaluating evidence that could yield contrary inferences, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier [of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Drupals*, 306 Conn. 149, 157–58, 49 A.3d 962 (2012). With these principles in mind, we address the charges of which the defendant was convicted in turn.

A

The defendant first claims that the evidence presented at trial was insufficient to support his conviction for criminal trespass in the third degree. The state charged the defendant, by way of an amended long form information dated June 24, 2014, with "enter[ing] . . . the property comprising a public housing project located at 16 School Street, which is posted in a manner prescribed by law or reasonably likely to come to the attention of intruders, knowing that he did not have a license or privilege to do so, in violation of . . . § 53a-109 (a)."[3] In his brief to this court, the defendant concedes that the state proved that he entered the subject premises, but argues that it failed to prove that the premises were "posted in a manner prescribed by law or reasonably likely to come to the attention of intruders" and that he entered those premises knowing that he did not have a license or privilege to do so.

On the charge of criminal trespass in the third degree, the trial court concluded that the defendant "did enter or remain in the premises, to wit, and, posted in a manner prescribed by law or reasonably likely to come to the attention of the intruders, knowing he did not have license or privilege to do so."

In determining that the premises were posted in a manner reasonably likely to come to the attention of intruders, the court credited the testimony of Aurora Holley, an "occupant specialist" employed by the Norwalk Housing Authority, which owns the housing project located at 16 School Street. Holley testified that "No

Trespassing" signs are posted throughout the property at 16 School Street, as required by law.[4] Luciano testified that, on the night in question, he observed two such signs, one posted at the only entrance to the premises and the other posted on a fence near the dumpster next to which the Honda was parked. Although the defendant rightly notes that those signs are not depicted in any of the photographs that were admitted into evidence at trial, and argues that there may have been insufficient lighting for the defendant to see those signs, the court was free to credit Luciano's testimony that the signs were present and visible to a person in the defendant's position on that evening. We thus conclude that the court's determination that the premises were posted in a manner reasonably likely to come to the attention of the defendant was well supported by the evidence adduced at trial.

The defendant also claims that the evidence was insufficient to prove beyond a reasonable doubt that he knew that he did not have a license or privilege to be on the premises at 16 School Street. "A person acts 'knowingly' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists . . . ." General Statutes § 53a-3 (12). Thus, to prove that the defendant knew that he did not have a license or privilege to be at 16 School Street, the state was necessarily required to prove that, in fact, he did not have such a right or privilege. The defendant claimed at trial, as he does now on appeal, that he had been invited to the premises at 16 School Street, to meet a friend who then resided there, in order to accompany her to her twenty-first birthday party. In support of that claim, the defendant offered the testimony of Tiffany Hall, of 16 School Street, who testified, inter alia, that she had invited the defendant, with whom she had been friends for eight or nine years, to her twenty-first birthday party, which she was throwing that evening at a local pub. Hall testified that she had handed the defendant an invitation to her party, a copy of which was admitted into evidence as "Defendant's Exhibit C," at about six or seven o'clock on the evening of July 13, 2012. Although the invitation indicated that the party would begin at 9 p.m. that evening at a local pub, Hall testified that all of the partygoers had been told to meet her at 16 School Street, where they would follow her in her limousine to the party. Hall testified that, while she was walking from her apartment on the premises to her limousine, she saw the defendant and Freitag being arrested, prompting her to call out to them, "Yo, you good?"[5] She testified that she did not tell the arresting officers that the defendant and Freitag were there for her party because other officers were blocking her from reaching them.

In finding the defendant guilty of criminal trespass in the third degree, the court concluded: "[T]here's no

evidence at all, that I can see, or reasonable inference therefrom, regarding criminal trespass in the third degree, that [the defendant] had a privilege to be there." In so concluding, the court improperly shifted the burden to the defendant to prove that he had a license or privilege to be on the premises at 16 School Street, rather than placing the burden on the state to prove that he had no license or privilege to be there. It is axiomatic that the defendant does not bear the burden of disproving the statutory elements of any crime with which he has been charged. Specifically, as it relates to the defendant's claim that he was on the premises that evening because one of its residents had invited him to be there, this court has held that when a defendant claims a license or privilege to be present on the basis of the consent of the property owner, it is "the state's burden, in establishing . . . unlawful[ness] . . . to prove that no such consent had been given." *State* v. *Grant*, 6 Conn. App. 24, 31, 502 A.2d 945 (1986).

Here, the defendant claimed that he had been invited to 16 School Street by Hall to follow her limousine to her birthday party, which was being held at a local pub. The trial court stated that it found Hall's testimony to be "credible," but determined that, because the invitation that was admitted into evidence indicated the location of the party was a local pub, without making any mention of 16 School Street, there was "nothing to support th[e] inference" that Hall told the defendant to meet at 16 School Street.[6]

The defendant's explanation that he had been invited by Hall to meet at her apartment complex to go to her party is supported by the fact that he was there at the time indicated on the invitation. Moreover, Luciano testified that the dumpster next to which Freitag's Honda had been parked was located on the northwestern portion of the property at 16 School Street. Hall testified that she resided in building 5. State's exhibit 14, which is the "16 School Street Site Plan," indicates that building 5 is also located on the northwestern portion of the property. The defendant's location in that area was therefore consistent with his claim that he was on the property to meet up with Hall. We thus conclude that the court's determination that there was no evidence from which it could find that the defendant had been invited to 16 School Street is contradicted by the record.

Even, however, if the court had found Hall to be "incredible," which it did not, mere disbelief of her testimony that she had invited the defendant to meet her at 16 School Street on the evening of his arrest would furnish no basis for concluding, to the contrary, that the defendant had no license or privilege to be at 16 School Street at the time of his arrest, much less that he knew that he had no such license or privilege. See *State* v. *Alfonso*, 195 Conn. 624, 633–34, 490 A.2d

75 (1985). The state was required to present affirmative evidence to support those essential statutory elements, but it failed to do so.

The state argues that it presented sufficient evidence from which the trial court reasonably could have inferred that the defendant had not been invited to 16 School Street, based upon his and Freitag's suspicious behavior when they first saw the police and the fact that one or both of them urinated on an outside fence on the premises instead of using a resident's bathroom. To this the state adds that neither the defendant, Freitag, nor Hall when she walked by them, ever told the arresting officers that she had invited them to meet her there that evening. The state argues that the foregoing conduct of the defendant is inconsistent with that which would have been expected from one who believed himself to be lawfully on a particular property. We disagree.

To begin with, the defendant's and Freitag's nervous conduct on seeing the officers was consistent with that of anyone who encounters law enforcement personnel after being discovered urinating in public or while possessing illegal contraband. It reveals nothing about whether or not they had been invited by a resident to be on the premises that evening. Furthermore, once the officers approached them as they sat in the Honda after trying unsuccessfully to back out of their parking place near the dumpster, the new focus of their investigation became the marijuana whose pungent odor was clearly detectible from outside the vehicle. Because the officers, from that point forward, concentrated their efforts on searching the vehicle for contraband, they never questioned the defendant and Freitag about their reasons for being on the premises that evening or gave them any reason to believe that offering an explanation on that subject would, inter alia, enable them to avoid criminal trespass charges, aid their cause, or affect their fate in relation to the marijuana. For similar reasons, Hall had no reason to tell the officers, when she saw the defendant and his companion being arrested for unknown reasons, that they were present on the premises that evening as her guests. She was not questioned on that subject and had no reason to volunteer information concerning it. Moreover, even if any of the foregoing evidence could have supported the inference that the defendant and his companion did not believe that they had a license or privilege to be at 16 School Street that evening, such ambiguous conduct did not establish that they in fact had no license or privilege to be there. This scant evidence was simply insufficient to prove by any standard, let alone beyond a reasonable doubt, that the defendant knew that he did not have a license or privilege to be on the premises at 16 School Street. We thus agree with the defendant that the evidence was insufficient to support his conviction for criminal trespass in the third degree, because there is no reasonable view of the evidence that supported a finding of

guilty.

B

The defendant also challenges the sufficiency of the evidence supporting his conviction of possession of less than one-half ounce of marijuana pursuant to § 21a-279a (a). Because the marijuana seized in this case was not found on the defendant's person, the state was required to prove that he constructively possessed it, and the defendant argues that the state failed to do so. We disagree.

"[General Statutes] 51-164n (i) provides that in any trial for the alleged violation of § 21a-279a (a), the burden of proof shall be by the preponderance of the evidence, rather than the higher criminal standard—proof beyond a reasonable doubt—that governs most other violations and infractions." *State* v. *Menditto*, 315 Conn. 861, 875, 110 A.3d 410 (2015). Thus, "[i]n order to prove that a defendant is guilty of possession of narcotics . . . the state must prove [by a preponderance of the evidence] that the defendant had either actual or constructive possession of a narcotic substance. . . . Actual possession requires the defendant to have had direct physical contact with the narcotics. . . . Constructive possession, on the other hand, is possession without direct physical contact. . . . To prove either actual or constructive possession of a narcotic substance, the state must establish [by a preponderance of the evidence] that the accused knew of the character of the drug and its presence, and exercised dominion and control over it. . . .

"Where . . . the [narcotic substance] was not found on the defendant's person, the state must proceed on the theory of constructive possession . . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . In determining whether the attendant incriminating circumstances support an inference of constructive possession, the proper focus is on the relationship between the defendant and the contraband found in the apartment rather than on the relationship between the defendant and the apartment itself." (Citation omitted; internal quotation marks omitted.) *State* v. *Nova*, 161 Conn. App. 708, 718–19, 129 A.3d 146 (2015).

In finding the defendant guilty by a preponderance of the evidence, the trial court noted the training and experience of Rodriguez and Luciano, and credited their testimony that they smelled what they believed to be

marijuana when they approached Freitag's Honda—
Rodriguez from the driver's side and Luciano from the
passenger side. The trial court credited Luciano's testi-
mony that the defendant, who had been sitting in the
passenger's seat, exhibited behavior consistent with
being under the influence of marijuana, namely, "glassy
eyes, slurred words." Luciano testified that the defen-
dant reached down toward the floor of the vehicle with
his left hand prior to complying with Luciano's order
to exit the vehicle. While the vehicle was searched by
the canine unit, Luciano testified that the defendant
became nervous and fidgety. A plastic bag of marijuana
was discovered on the floor near the passenger seat.

The discovery of the marijuana near the seat that the
defendant was sitting in, and his gesture toward the
bag of marijuana prior to exiting the vehicle demon-
strated his knowledge that the bag was present and his
concern about it being discovered. His nervous behav-
ior and his demonstration of symptoms of being under
the influence of marijuana are sufficient to prove by a
preponderance of the evidence that the defendant was
in constructive possession of the marijuana. Although
the defendant argues that the evidence at trial could
be construed in a manner consistent with his innocence,
it is the role of this court to determine whether the
findings made by the trial court are reasonably sup-
ported by the record, not to consider alternative views
of the evidence. We conclude that the trial court's find-
ings are supported by the record, and thus that the
evidence was sufficient to support the defendant's con-
viction of possession of less than one-half ounce of mar-
ijuana.

## II

The defendant also claims that the court erred in
denying his motion to suppress and that he is entitled
to a new trial on the basis of that error on the charge
of possession of less than one-half ounce of marijuana.
The defendant claims that the search of the vehicle and
the seizure of the marijuana on the evening in question
was conducted pursuant to an unlawful stop that was
not justified by a reasonable and articulable suspicion
of criminal activity. We disagree.

"Our standard of review of a trial court's findings and
conclusions in connection with a motion to suppress is
well defined. A finding of fact will not be disturbed
unless it is clearly erroneous in view of the evidence
and pleadings in the whole record . . . . [W]here the
legal conclusions of the court are challenged, we must
determine whether they are legally and logically correct
and whether they find support in the facts set out in
the memorandum of decision . . . . [T]he trial court's
conclusions must stand unless they are legally and logi-
cally inconsistent with the facts. . . .

"The law governing investigatory detentions is also

well settled. Under the fourth amendment to the United States constitution and article first, §§ 7 and 9, of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. . . . Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . .

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . [A]n investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal. . . . In evaluating the validity of such a stop, courts must consider whether, in light of the totality of the circumstances, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. . . .

"Consequently, [w]e do not consider whether the defendant's conduct possibly was consistent with innocent activity but, rather, whether the rational inferences that can be derived from it reasonably suggest criminal activity to a police officer. . . . When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Peterson*, 320 Conn. 720, 730–32,      A.3d      (2016).

Here, the defendant and the state disagree as to what constituted the allegedly unlawful stop. The defendant argues that the stop occurred when Freitag put the vehicle in reverse and was prevented from leaving because the police cruiser was behind it, and thus that any evidence relied upon by the trial court that occurred after that point, such as the officers' testimony that they smelled marijuana as they approached the vehicle or the officers' conversation with Horelick, could not have been considered as contributing to a reasonable and articulable suspicion to stop the vehicle. The state argues that the court did not make an explicit determination as to when the vehicle was stopped, but clearly

and properly considered the totality of the circumstances of the entire encounter, including events that occurred after Freitag had put the vehicle in reverse to attempt to leave. We need not resolve this dispute because we conclude that the evidence presented at the suppression hearing was sufficient to support a finding of reasonable and articulable suspicion at the time Freitag put his car in reverse to attempt to drive away, and the defendant has asserted no independent challenge to the subsequent search of the vehicle that was conducted on the basis of additional information that came to the officers' attention after the stop.

The court specifically noted that Rodriguez and Luciano patrolled the area frequently as part of a special services unit to investigate constant complaints of "intruders bringing in drugs, gangs, [and] violence." The court found that the officers were familiar with and knew most of the residents of 16 School Street, and at 9 p.m. on July 13, 2012, they saw two men, whom they did not recognize as residents of 16 School Street, emerge from behind a dumpster, which was surrounded on three sides by a fence, upon which was posted a "No Trespassing" sign, and walk nervously and quickly to a vehicle while trying to avoid eye contact with them. On the basis of this evidence, we conclude that the court properly determined that the police officers had a reasonable and articulable suspicion to justify an investigatory stop and thus that the trial court properly denied the defendant's motion to suppress.

The judgment of conviction of criminal trespass in the third degree is reversed and the case is remanded with direction to render judgment of acquittal on that charge. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The defendant was also charged with possession of a weapon in a motor vehicle in violation of General Statutes § 29-38 (a) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). He was acquitted of those charges.

[2] The search of the vehicle also revealed two firearms. As noted, the defendant was acquitted of both weapons offenses with which he was charged.

[3] General Statutes § 53a-109 (a) provides: "A person is guilty of criminal trespass in the third degree when, knowing that such person is not licensed or privileged to do so: (1) Such person enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders or are fenced or otherwise enclosed in a manner designed to exclude intruders, or which belong to the state and are appurtenant to any state institution; or (2) such person enters or remains in any premises for the purpose of hunting, trapping or fishing; or (3) such person enters or remains on public land which is posted in a manner prescribed by law or reasonably likely to come to the attention of intruders or is fenced or otherwise enclosed in a manner designed to exclude intruders."

[4] Holley also testified that guests of residents of 16 School Street are permitted and, if they have not had a criminal record within five years, they do not need to be accompanied by the resident who had invited them. Because the defendant did not have a criminal record, this testimony does not appear to be relevant.

[5] Luciano confirmed that he heard Hall yell out to the defendant.

[6] The court explained: "The inference to draw, if any, was that sometime from the two hours, or so, of when it was handed to [the defendant], if I believe the testimony of Ms. Hall, then she would have told him, verbally,

to meet at 16 School Street.

"She testified, and corroborated, that at the time the limo was there, she uttered the words, yo, are you good, quote unquote, which was corroborated by Officer Luciano.

"And as to whether or not she knew anything about the arrest that was being affected and the police activity—or the reason for the police activity, was not on this record. And that lends itself to speculation and conjecture."

---